IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 20, 2002

## STATE OF TENNESSEE v. RUBEN JOSEPH KNIGHT, JR.

**Appeal from the Circuit Court for Blount County**
**No. C-11795     D. Kelly Thomas, Jr., Judge**

---

**No. E2001-02874-CCA-R3-CD**
**December 2, 2002**

---

The defendant, Ruben Joseph Knight, Jr., appeals the Blount County Circuit Court's revocation of his community corrections sentence. Following our review of the record, the parties' briefs, and the applicable law, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Mack Garner, District Public Defender, Maryville, Tennessee, for the Appellant, Ruben Joseph Knight, Jr.

Paul G. Summers, Attorney General & Reporter; Christine M. Lapps, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Ellen Berez, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The presentence report contained in the record reflects that, on February 18, 1999, the defendant, after his neighbor denied him entry to the neighbor's house, broke into the neighbor's house and unsuccessfully attacked him with a knife. The incident resulted in guilty-pleaded convictions and sentences of aggravated burglary, three years; reckless aggravated assault, two years; and vandalism, eleven months, 29 days. All sentences run concurrently. The plea agreement called for the trial court to determine the manner of service of the effective three-year sentence, and on September 16, 1999, the trial court ordered confinement in the Department of Correction. The defendant appealed to this court, which reversed the total confinement feature of the sentence and remanded the case to the trial court for alternative sentencing. *See State v. Ruben Knight,* No. E1999-01953-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Knoxville, July 24, 2000). Upon

remand, on September 13, 2000, the trial court placed the defendant in the community corrections program.

On August 23, 2001, the court issued a community corrections revocation warrant that alleged that the defendant had violated the terms of his placement by moving to Knox County without prior permission of his probation officer, by failing to report to his probation officer that he had been arrested for DUI, by failing to attend group counseling sessions during the weeks of August 6 and 13, 2001, and by failing to verify his required attendance at Narcotics Anonymous (NA) meetings. On November 26, 2001, the court conducted a revocation hearing.

In the hearing, the 22-year-old defendant testified that his problems emanated from illegal drug use that began when he was fifteen or sixteen years old. After serving a year in jail for the present convictions, he was placed in the community corrections program, which included "cognitive moral restructuring" group counseling. The defendant believed that the counseling and the NA meetings helped him appreciably; however, he admitted that before his recent DUI arrest, he had failed to verify to his probation counselor that he had attended NA meetings and that due to a strep throat ailment, he had failed to attend group counseling the weeks of August 6 and 13, 2001. He admitted that he was arrested on August 19, 2001 for DUI. He testified that, following a hospital visit when he was treated for chest wall pain, he was prescribed Lorazepam, a tranquilizer that caused him to fall asleep and wreck his vehicle on August 19, 2001 when he was driving to Knoxville to pick up his wife. This incident resulted in the DUI charge, which was still pending at the time of the revocation hearing.

The defendant testified that, after the DUI arrest, he became frightened that his community corrections probation would be revoked and that he would be incarcerated. These factors prompted him to move to Knoxville in the hopes that his supervision would be transferred there and that the DUI arrest would remain undisclosed to Knox County probation officials. He admitted that he sought no prior approval before moving, in contravention of the community corrections contract, and that he only advised his probation officer of the move by leaving a message on her answering machine.

Following the hearing, the trial court revoked the community corrections placement and re-sentenced the defendant to confinement in the Department of Correction for a term of six years on the aggravated burglary charge. The other two sentences and the concurrent alignment of sentences were not altered. The trial court granted the defendant 741 days of jail credit. From this judgment, the defendant effected a timely appeal.

On appeal, the defendant claims that the trial court erred in revoking the community corrections sentence based upon technical violations of the community corrections contract and that the court erred in re-sentencing the defendant to a term of six years on the aggravated burglary sentence.

## I. Revocation.

The defendant concedes that the trial court had factual bases for finding that he violated the community corrections contract; however, he argues that the court erred in ordering him to serve the balance of his sentence in confinement.

The decision to revoke a community corrections sentence rests within the sound discretion of the trial court and will not be disturbed on appeal unless there is no substantial evidence to support the trial court's conclusion that a violation has occurred. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). In reviewing the trial court's finding, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If the evidence is sufficient, the trial court may, within its discretionary authority, revoke the community corrections sentence and require the defendant to serve his sentence in confinement. Tenn. Code Ann. § 40-36-106(e)(4) (Supp. 2001).

We conclude that the record reflects that the trial court exercised a conscientious and intelligent judgment. As conceded by the defendant, factual bases existed for finding that he had breached the terms of his community corrections contract. Failing to report the DUI arrest and failing to obtain permission prior to his move to Knox County appear to us to be more than mere "technical violations." Despite the petitioner's claims that the counseling program had helped him and that he had abstained from using drugs, the trial judge was unpersuaded and found that the defendant had relapsed into drug use that resulted in his DUI arrest. The court found that the defendant's prospects for rehabilitation were poor. Because this determination is founded upon an assessment of the defendant's credibility, we are in no position to revisit the issue. Implicit in the trial court's findings is its determination that the defendant did not succeed in the community-based program and that confinement was the appropriate response. We discern no arbitrary action in this determination.

## II. Re-sentencing.

Although the defendant concedes that the trial court was authorized to re-sentence the defendant upon revocation of his community corrections sentence, he claims that the court erred in doing so. *See* Tenn. Code Ann. § 40-36-106(e)(4) (Supp. 2001) (authorizing court to re-sentence defendant after revocation of community corrections placement).

The trial court based its re-sentencing decision upon its findings that the defendant had a previous history of criminal conduct, that he lacked hesitation in committing the offense of aggravated burglary when the risk to human life was high, and that he was unwilling to comply with sentencing conditions involving release into the community. *See id.* § 40-35-114(1), (8), (10) (Supp. 2001) (establishing sentencing enhancement factors of previous history of criminal convictions or behavior, previous history of unwillingness to comply with conditions of sentence involving release into the community, and lack of hesitation about committing crime involving high risk to human

life). The court based its confinement decision upon a finding that confinement was necessary to avoid depreciating the seriousness of the offense and that less restrictive measures have recently and unsuccessfully been applied. *See id.* § 40-35-103(1)(B), (C) (1997) (establishing considerations for ordering confinement). The defendant argues that the first two sentence-enhancement factors relied upon by the lower court to impose a six-year sentence were used previously by the court when it imposed the three-year sentence following the defendant's guilty plea and that these same factors should not now serve to justify doubling the sentence.

The defendant cites *State v. Ervin*, 939 S.W.2d 581 (Tenn. 1996), and *State v. Crook*, 2 S.W.3d 238 (Tenn. Crim. App. 1998), in support of his argument that the lower court was not permitted to re-use previously applied enhancement factors. We neither read these cases, nor have we found other cases, to stand for this proposition. In actuality, however, we need not determine the issue because the third enhancement factor, that the defendant had a previous history of unwillingness to comply with conditions of a sentence involving release into the community, not only applies but serves amply to support the trial court's enhancement of the aggravated burglary sentence to six years. *See State v. Dale Godwin*, No. W2001-00212-CCA-R3-CD, slip op. at 5-7 (Tenn. Crim. App., Jackson, Dec. 14, 2001) (conduct of defendant "while serving a community corrections sentence can be used to establish the applicability of enhancement factor (8)"), *perm. app. denied* (Tenn. 2002).

We recognize that the trial court should not increase the sentence "for the sole and exclusive purpose of punishing an accused for violating provisions of a Community Corrections sentence." *Ervin*, 939 S.W.2d 583. However, our supreme court has recognized "the need to alter the defendant's sentence in light of the fact that the court's initial sentence to a community based alternative to incarceration was not effective." *See State v. Griffith*, 787 S.W.2d 340, 342 (Tenn. 1990). In the present case, the trial judge essentially fulfilled this need when he increased the sentence after finding that the defendant, despite the ameliorative programs extended to him in community corrections, relapsed into drug use and that the prospects for rehabilitation were poor. The trial court's findings and ultimate sentencing determination are supported by the record.

As to the trial court's determination that all of the six-year sentence must be served in confinement, we add that the court relied in part upon its finding that "[m]easures less restrictive than confinement [had] . . . recently been applied unsuccessfully to the defendant." *See* Tenn. Code Ann. § 40-35-103(1)(C) (1997) (establishing considerations for sentencing involving confinement). Based upon the defendant's performance in the community corrections program, we must agree and find that the decision to order confinement is supported in the record and is in no sense arbitrary.

Accordingly, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE